# EXHIBIT A

ELECTRONICALLY FILED
7/9/2014 9:58 AM
2014-CH-11197
CALENDAR: 10
PAGE 1 of 3
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| BYER CLINIC OF CHIROPRACTIC, LTD., an Illinois corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| THE ALLSTATE CORPORATION, LENSINK AGENCY, INC. and JOHN DOES 1-10, | ) ) ) ) |
| Defendants. | ) |

Civil Action No.: 2014-CH-11197

Calendar 10

SERVE: The Allstate Corporation
C/o CT Corporation System
208 S. LaSalle St. #814
Chicago IL 60604

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, BYER CLINIC OF CHIROPRACTIC, LTD., by and through its attorneys,

Anderson + Wanca, respectfully moves this court, pursuant to 735 ILCS 5/2-801 et seq., to

certify for class action treatment the following classes, as described in Plaintiff's Class Action

Complaint:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, and (3) which did not display a proper opt-out notice.

> All persons who (1) on or after five years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants,

> All persons who (1) on or after three years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants.

Plaintiff will file a supporting Memorandum of Law in due course.

7/15/14



WHEREFORE, Plaintiff, BYER CLINIC OF CHIROPRACTIC, LTD., prays that this court enter an order pursuant to 735 ILCS 5/2-801 certifying for class treatment the classes set forth herein.

<div style="text-align:center">Respectfully submitted,</div>

BYER CLINIC OF CHIROPRACTIC, LTD.,
individually and as the representative for a class of
similarly-situated persons

By:    s/ Brian J. Wanca
       One of the Attorneys for Plaintiff

ELECTRONICALLY FILED
7/9/2014 9:58 AM
2014-CH-11197
PAGE 2 of 3

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500
Firm ID: 57010

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2014, I electronically filed the foregoing with the Clerk of the Court of Cook County, Illinois and I hereby certify that the foregoing document or paper will be served on the Defendants at the time the complaint is served.

s/ Brian J. Wanca

ELECTRONICALLY FILED
7/9/2014 9:58 AM
2014-CH-11197
PAGE 3 of 3

ELECTRONICALLY FILED
7/9/2014 9:58 AM
2014-CH-11197
CALENDAR: 10
PAGE 1 of 3
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

BYER CLINIC OF CHIROPRACTIC, LTD., an )
Illinois corporation, individually and as the )
representative of a class of similarly-situated )
persons, )
                              )
              Plaintiff, )    Civil Action No.: 2014-CH-11197
                              )
                    v. )    Calendar 10
                              )    *SERVE: The Allstate Corporation*
THE ALLSTATE CORPORATION, LENSINK )    *c/o CT Corporation System*
AGENCY, INC. and JOHN DOES 1-10, )    *208 S. LaSalle St #814*
                              )    *Chicago, IL 60604*
             Defendants. )

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, BYER CLINIC OF CHIROPRACTIC, LTD., by and through its attorneys,

Anderson + Wanca, respectfully moves this court, pursuant to 735 ILCS 5/2-801 et seq., to

certify for class action treatment the following classes, as described in Plaintiff's Class Action

Complaint:

> All persons who (1) on or after four years prior to the filing of this
> action, (2) were sent telephone facsimile messages of material
> advertising the commercial availability of any property, goods, or
> services by or on behalf of Defendants, and (3) which did not display a
> proper opt-out notice.

> All persons who (1) on or after five years prior to the filing of this
> action, (2) were sent telephone facsimile messages of material
> advertising the commercial availability of any property, goods, or
> services by or on behalf of Defendants,

> All persons who (1) on or after three years prior to the filing of this
> action, (2) were sent telephone facsimile messages of material
> advertising the commercial availability of any property, goods, or
> services by or on behalf of Defendants.

Plaintiff will file a supporting Memorandum of Law in due course.



**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2014, I electronically filed the foregoing with the Clerk of the Court of Cook County, Illinois and I hereby certify that the foregoing document or paper will be served on the Defendants at the time the complaint is served.

s/ Brian J. Wanca

ELECTRONICALLY FILED
7/9/2014 9:58 AM
2014-CH-11197
PAGE 3 of 3

3

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| ☑ SUMMONS | ☐ ALIAS - SUMMONS (2/ |

`* 0 1 4 8 9 9 5 5 *`

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT,      CHANCERY      DIVISION

BYER CLINIC

No. 2014-CH-11197

(Name all parties)

v.

THE ALLSTATE CORPORA

**Defendant Address:**

THE ALLSTATE CORPORA
R/A CT CORPORATION SYSTEM
208 S. LASALLE STREET
SUITE 814
CHICAGO, IL 60604

**Summons**

To each Defendant:     ☑ SUMMONS     ☐ ALIAS - SUMMONS

     YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room     802     ,Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

     This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.:    57010

Name:    BRIAN JOHN WANCA

Atty. for:    BYER CLINIC

Address:    3701 ALGONQUIN ROAD

City/State/Zip:    ROLLING MEADOWS, IL 60008

Telephone:    (847) 368-1500

WITNESS, Tuesday, 08 July      2014

/s DOROTHY BROWN
Clerk of Court

Date of service: _____

(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code)     (Facsimile Telephone Number)

/s DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| ☑ SUMMONS | ☐ ALIAS - SUMMONS |

(2/18

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

COUNTY DEPARTMENT, _____ CHANCERY _____ DIVISIO.

No. 2014-CH-11197

BYER CLINIC

_____ (Name all parties)

v.

THE ALLSTATE CORPORA _____

**Defendant Address:**

THE ALLSTATE CORPORA
R/A CT CORPORATION SYSTEM
208 S. LASALLE STREET
SUITE 814
CHICAGO, IL 60604

**Summons**

To each Defendant:     ☑ SUMMONS     ☐ ALIAS - SUMMONS

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____ 802 _____, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: _____ 57010

Name: _____ BRIAN JOHN WANCA

Atty. for: _____ BYER CLINIC

Address: _____ 3701 ALGONQUIN ROAD

City/State/Zip: _____ ROLLING MEADOWS, IL 60008

Telephone: _____ (847) 368-1500

WITNESS, Tuesday, 08 July _____ 2014

/s DOROTHY BROWN
Clerk of Court

Date of service: _____,_____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)     (Facsimile Telephone Number)

/s DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
CALENDAR: 13
PAGE 1 of 24
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| PATRICK CAMASTA, individually and on behalf of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | -) ) | No. 09 CH 40180 |
| H2O Plus, LLC, | ) ) | |
| Defendant. | ) ) ) | |

### PLAINTIFF'S REPLY MEMORANDUM OF LAW
### IN SUPPORT OF CLASS CERTIFICATION

Pursuant to 735 ILCS § 5/2-801, Plaintiff, Patrick Camasta ("Plaintiff"), submits this Reply Memorandum of Law in Support of his Motion for Class Certification.

### Introduction

It is undisputed that on October 15, 2009, Plaintiff purchased products from H2O's store at 600 Michigan Avenue, Chicago, Illinois, using a MasterCard credit card, and that he was provided a printed electronic receipt that contained the expiration date of the MasterCard, in violation of FACTA. It is undisputed that between June 3, 2008 and October/November 2009, all printed credit/debit card receipts provided by H2O to its customers (admitted by H2O to be in excess of 78,000) displayed the expiration date of the person's credit/debit cards, in violation of FACTA. (Pl.'s Memo. in Supp., Ex. E, at pp. 4-5). H2O has also admitted that after June 3, 2008 it "provided to more than 10,000 persons an electronic receipt displaying the credit card's expiration date." (Pl.'s Memo. in Supp., Ex. F, at pp. 2-3). H2O has provided electronic data in this case which contains the full credit card numbers for all of the transactions in issue. In an effort to specifically identify the class (and in light of the Agreed Protective Order entered in this case), Plaintiff sought leave from the Court to subpoena credit companies to obtain the names and addresses of the class members. H2O has continuously objected

to such subpoenas based on its claimed concern of exposing its customers' credit card numbers. The Court has reserved addressing the subpoena issue until after the hearing on class certification.

Notwithstanding its objections to the subpoenas that will allow Plaintiff to specifically identify class members, and notwithstanding the Court's reservation regarding this issue, H20 argues in its Response the class is not ascertainable because Plaintiff has no way of identifying class members, class discovery is closed, and Plaintiff has served subpoenas to banks and credit cards but has yet to identify any other class members through those efforts. H20's Catch-22 argument regarding identification of the class should be rejected. H20's other arguments, that Mr. Camasta is a "professional plaintiff, that a class action in this FACTA case is not superior to individual suits, and that individual determinations need to be made as to whether class members are "consumers" (rather than businesses) are equally unpersuasive.

As demonstrated in Plaintiff's Memorandum in Support and in this Reply, Plaintiff easily satisfies the standards for class certification set forth in section 2-810 of the Code of Civil Procedure (735 ILCS § 5/2-801). The class should be certified, Mr. Camasta should be appointed the class representative, and Plaintiff's counsel should be appointed class counsel.

**I.    Response to Plaintiff's "Statement of Facts."**

In what it styles as "Statement of Facts," *see* H20 Br. at 2-7, H20 first provides a discussion of the Fair and Accurate Transactions Act of 2003 ("FACTA"), 15 U.S.C. § 1681c(g), but that discussion only serves to underscore H20's willful failure to comply with the provisions of FACTA. H20 notes the Fair Credit Reporting Act (FCRA) was passed in 1970 to protect consumers from potential abuses of the credit reporting industry. (H20 Br. at 2). In 2003, FACTA was passed to protect consumers from identity theft; among its prohibitions is printing the expiration date "upon any receipt provided the cardholder at the point of sale or transaction." (H20 Br. at 2). Merchants (such as H20) were initially given until December 1, 2006 to comply. (H20 Br. at 3). Thereafter, Congress passed the

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 2 of 24

Credit Card Receipt Clarification Act in 2007, which extended the time within which to comply with the "no expiration date" requirement to June 3, 2008. In other words, H20 was given approximately five years to comply with the requirements of FACTA, but willfully failed to do so.

Second, H20 offers that Patrick Camasta is a "professional plaintiff" who, instead of informing H20 of its violation of FACTA, filed suit instead, which apparently makes Camasta an inadequate class representative and somehow excuses H20's undisputed and willful FACTA violations. (H20 Br. at 4, 5). Contrary to H20's assertion, Camasta is not responsible for ensuring that H20 complies with federal statutes, and as demonstrated *infra*, the "professional plaintiff" argument has been expressly rejected by the Seventh Circuit. *See Murray v. GMAC*, 434 F.3d 948, 954 (7th Cir. 2006).

Third, H20 notes the parties engaged in lengthy discovery since the lawsuit and the original motion for class certification was filed. (H20 Br. at 6). In particular, H20 states it has produced its records relating to the transactions at issue, and that Plaintiff has issued subpoenas to multiple third parties, including banks and credit card companies. (H20 Br. at 6). What H20 neglects to mention is its opposition to the subpoenas that will allow Plaintiff to specifically identify each class member, and the Court's reserving on that issue until after a ruling on class certification.[1] Moreover, H20's

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 3 of 24

---

[1] On January 7, 2014, Plaintiff filed a Motion for Leave to Serve Subpoenas, a copy of which is attached as Exhibit J. Plaintiff's Motion was addressed with the Court at status on January 8, 2014, which status was continued until February 4, 2104. (A copy of the January 8, 2014 order attached hereto as Exhibit K). At the February 4, 2014 status, the Court entered an order setting a briefing schedule on Plaintiff's Motion for Class Certification, a copy of which is attached hereto as Exhibit L. At that time, Plaintiff's counsel (Wallace Solberg) again addressed with the Court H20's objections to the subpoenas to the Court, and it was decided by the Court that Plaintiff would file its memorandum in support of class certification and, if H20 in its response challenged ascertainability, the issue of service of the subpoenas would be revisited. On June 3, 2014, the parties appeared before the Court on H20's motion for leave to file an oversized Response Brief. Not only did H20 claim in its Response that the putative class is not ascertainable, that argument is the lynchpin of H20's opposition to class certification. Moreover, H20 continued to object to the service of any subpoena that would identify the putative class members in this case. The matter was addressed at length before the Court on June 3 and after Plaintiff's counsel explained the method by which it would identify the class, the subpoenas to Discover and AMEX, wherein Plaintiff already has the credit card number and simply needs the names and addresses, and the subpoenas to the remaining credit card companies, VISA, MasterCard, Diner's Club and JBC, which Plaintiff will subpoena to obtain the issuing banks and, thereafter, will issue subpoenas to the issuing banks for the names and addresses of the putative class members, the Court decided that the service of the subpoenas at issue would be addressed after the hearing on class certification.

statement regarding service of the subpoenas is incorrect. H20 expressly objected to subpoenas being served on Discover and AMEX and they have yet to be served.

Fourth, while H20 correctly recognizes that whether H20's conduct was "willful" under FACTA is a merits question, it sets forth what it contends excuses its failure to comply with FACTA. The attempt fails. It is undisputed H20's Director of Business Development Jim McLaughlin sent an email on February 2, 2007 to H20's Chief Financial Officer and H20's Director of Technology and Business Development that expressly warned of the legal ramifications of failing to comply with FACTA, including the fact that class action lawsuits were being filed against retailers for failure to comply. (*See* Pl.'s Memo. in Supp. at 4). H20's proffered defense is that its management read only the portion of the one-page email that dealt with truncating the last four digits of the credit card number on the printed receipt, and not the portion that stated that FACTA also makes it illegal to print the credit card expiration date. Ironically, the purpose of the email was to inform H20 management of H20's failure to comply with the four-digit credit card number truncation requirement – "[i]t has recently come to my attention that our current POS (point of sale) is still printing the full credit card # on customer receipts." (*See* Pl.'s Memo. in Supp. at 4). In short, while "willfulness" is a merits question, if the foregoing does not constitute "willful" noncompliance under FACTA, it is unclear what would.

II.     **The class is objectively identifiable based on objective criteria and H20's conduct and is therefore ascertainable.**

Plaintiff seeks certification of the following class:

> All persons to whom Defendant provided an electronically printed receipt at the point of transaction after June 3, 2008 which receipt displayed the expiration date of the cardholder's credit card or debit card number.

(Pl.'s Br. at 2).

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 4 of 24

A class is sufficiently definite "if its members can be ascertained by reference to objective criteria and may be defined by reference to defendant's conduct." *Shurland v. Baci*, 271 F.R.D. 139, 146 (N.D. Ill. 2010) (quoting *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp.2d 802, 806 (N.D. Ill. 2008); *see also Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 495-97 (7th Cir. 2012). To satisfy ascertainability, the plaintiff must identify a method of determining class membership based on "precise, objective criteria." *Buonomo v. Optimum Outsources, Inc.*, 2014 WL 1013841, at *6 (N.D. Ill. Mar. 17, 2014). A class may not be "amorphous or imprecise," and must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Bush v. Calloway Consolidated Group River City, Inc.*, 2012 WL 1016871, at *4 (M.D. Fla. Mar. 26, 2012).

Significantly, the identity of individual class members need not be ascertained before class certification. *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012) (citing Manual for Complex Litigation § 21.222, at 270 (4th ed. 2004); *see also Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 557-58 (C.D. Cal. 2012) (class members need not be ascertained prior to certification," as long as they are "ascertainable at some point in the case.") In short, definiteness does not require plaintiff to identify specific class members. *Shurland*, 271 F.R.D. at 146.

H20 first argues the proposed class is not ascertainable because Plaintiff has not demonstrated any means to identify or locate class members. (H20 Br. at 10). H20 represents it has produced business records comprising the data output from the company's retail point of sale system but that this data "does not contain information that would allow for the identification of which customers had received receipts during the alleged class period." (H20 Br. at 10-11, citing Keenan Dep. Tr. at 84-85). H20's argument seems to imply H20 did not have a custom and policy of handing receipts to its customers with its purchases. H20 has not put forth any record evidence as to this point and it would surprising if it did in light of its admission that "after June 3, 2008 it provided more than 10,000

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 5 of 24

persons an electronically printed receipt displaying the credit card's expiration date." (Pl.'s Memo. in Supp., Ex. F, at pp. 3-4). At best, such an issue would be a common question for the merits – was it H20's policy to hand its customers printed credit card receipts with their purchases that for the class period contained the card's expiration date. It is undisputed that H20 handed a printed credit card receipt to Plaintiff that violates FACTA.

Moreover, Todd Keenan, whose testimony H20 cites to above, also testified that as to H20's Plus Member Program, H20 kept track of the customers' name, contact information and purchase history and further, the data maintained by H20 would identify the dates on which the products by Plus Members were purchased. (Keenan Dep. Tr. at 85-86)[2]. Furthermore, as to each credit card transaction during the class period, Mr. Keenan testified "[t]o the best of my knowledge, the transaction could be associated with a credit card number, but not an individual name or any identifying information." (Keenan Dep. Tr. at 90-91). In other words, the credit numbers associated with the credit card purchases exist in the data produced by H20.

Finally, and dispositive of H20's argument, the class is in fact ascertainable and identifiable. H20 accepts credit cards from VISA, MasterCard, American Express, Discover, Diners Club and JCB. (Pl.'s Memo. in Supp., Ex. E., Ans. to Interrog. No. 3, at p. 3). H20 has admitted that between June 3, 2008 and October 31, 2009, it printed the expiration date on customers' receipts in over 78,000 transactions. (*Id.* at Ans. to Interrog. No. 7, at pp. 4-5) ("there were approximately seventy-eight thousand (78,000) credit or debit card transactions at H20 retail locations between June 3, 2008 and October 31, 2009 which receipts may have displayed the expiration date of the persons credit or debit card.") In response to Plaintiff's discovery requests, H20 eventually provided Plaintiff with electronic data containing the credit card numbers of the customers for all of the transactions at issue (at least

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 6 of 24

---

[2] Relevant portions of the Keenan Deposition Transcript ("Keenan Dep. Tr.") are attached hereto as Exhibit M.

H20 has represented as much), making H20's ascertainability argument factually unsupportable. As stated, the proposed class consists of all persons to whom Defendant [H20] provided an electronically printed receipt at the point of transaction after June 3, 2008 which receipt displayed the expiration date of the cardholder's credit card or debit card." In other words, the proposed class members can be ascertained by objective criteria and may be referenced by H20s conduct and, accordingly, the class is ascertainable. *Shurland,* 271 F.R.D. at 146.

H20's insistence that the class be specifically identified prior to class certification is contrary to cases interpreting Rule 23 (although section 2-5/801 is the relevant statute). For example, in *Abercrombie,* the putative class sought to be certified (based on a claim for breach of contract) consisted of recipients of promotional gift cards from defendant that allegedly had no expiration date that were subsequently voided by defendant. *Abercrombie,* 280 F.R.D. at 411. The class included anyone who held a gift card or who had thrown away a gift card they believed had been voided. *Id.* at 417. The court rejected defendant's argument that class membership was not ascertainable because the class members (with few exceptions) could not be "presently identified," *i.e.,* at the time of class certification, stating:

> The argument's premise is that absent class members' actual identities must be ascertained before a class can be certified. That premise is incorrect; as just noted, "the identity of individual class members need not be ascertained before class certification." Manual for Complex Litigation, *supra,* § 21.222, at 270; *see also Pella,* 606 F.3d at 394 (acknowledging that "at the outset of the case many members may be unknown"); 7A Wright, Miller & Kane, *supra,* § 1760, at 736 ("the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action"). It is enough that the class be ascertain*able.* The class in this case consists primarily of individuals holding an Abercrombie promotional gift card whose value was voided on or around January 30, 2010. <u>That criterion is as objective as they come.</u>

*Abercrombie,* 280 F.R.D. at 417-18 (italics in original) (emphasis added).

In *Shurland,* also a FACTA case, wherein plaintiff alleged he was given a credit card receipt that displayed his entire credit card number and expiration date, the court rejected the argument that the class was not ascertainable, stating:

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 7 of 24

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 8 of 24

In the case before this court, membership in the class can indeed be "ascertained by reference to objective criteria and ... defined by reference to defendant's conduct." *Hinman*, 545 F.Supp.2d at 806. The required analysis—determining only whether the purported class member made a purchase from Bacci [defendant] within the set dates—is a straightforward one. Although Defendant's own records are not as complete as Defendant itself insists they should be, there is a log listing the receipts issued during the period in which Bacci was not in compliance with FACTA's truncation requirement. The log includes partial credit card information for each transaction, the date it occurred, and the amount of the transaction. This information can, as Plaintiff explains, be used to verify whether any individual who responds to class notice is in fact a member of the class. The court concludes the class is sufficiently definite and overrules Defendant's objection on this basis.

*Shurland*, 271 F.R.D. at 146-47 (emphasis added).

In *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 127 (S.D.N.Y. 2011), also a FACTA receipt case, the court defined the class as "[A]ll persons who made in-store purchases from the Defendant using a debit or credit card, in a transaction occurring from December 4, 2006, through April, 2010," and held that the class, as revised, was "readily ascertainable," stating:

Membership in the class is defined by identifiable objective criteria—all customers who made purchases with credit or debit cards during the relevant time periods. The class members will be identified based upon business records produced in discovery. The plaintiff submitted evidence that the defendant maintains its invoice records at a warehouse in Long Island City, New York, and that these invoices contain credit and debit card numbers. (Robinson Aff., ¶ 14.) These invoices can effectively be used to identify the class members, without a fact-intensive inquiry. The proposed class therefore meets the requirement of ascertainability.

*Engel*, 279 F.R.D. at 127.

Finally, in *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 154 (S.D.N.Y. 2010), also a FACTA receipt case, defendant argued the class was not ascertainable because the class was "imprecise" and because determining class membership would require individual inquiries. The court rejected these arguments, stating:

The Court finds both of these arguments unpersuasive. First, membership in the class is defined by identifiable criteria—all debit or credit card customers who received a receipt from Lindt Store # 347 whose receipt was printed after December 4, 2006 and contained more than the last five digits of their credit card number, or whose receipt was printed after June 3, 2008 and contained the expiration date of the card. The contours of this class are clearly set forth and class membership can easily be

determined by these criteria. Second, the Court views the small number of individualized factual determinations that must be made here in ascertaining membership in the class as entirely manageable. Therefore, the Court finds that the proposed class is sufficiently ascertainable.

*Friedman-Katz*, 270 F.R.D. at 154 (emphasis added).

In the instant case, as in *Abercrombie, Shurland, Engel,* and *Friedman-Katz*, the criterion for class certification in this case is also objective – all persons who purchased products at H20 stores between June 3, 2008 and October 31, 2009 and paid with a credit or debit card. Accordingly, the class is ascertainable.

H20 argues Plaintiff has made "some attempts in this litigation to obtain cardholder identifying information" from third party credit card companies and banks but to date, "no such attempt has yielded any identifying information," and that Plaintiff has made no showing that such attempts will be successful in the future. (H20 Br. at 13-14). Although H20 recognizes Plaintiff seeks to identify the class "by requesting from the credit card companies and issuing banks identifying information associated with the credit card numbers and expiration dates," *see* H20 Br. at 13 n.7, H20 nonetheless argues:

> The Court is left with no means of identifying the class other than, perhaps, through class members coming forward with copies of non-compliant receipts. Such a means of identification would be highly individualized and fact-specific and, no doubt, largely futile as the number of potential class members who have preserved their receipts from six years ago is likely to be very low. And, of course, Camasta has not even suggested this or any other method of ascertaining the proposed class. As such, Camasta's proposed class is not ascertainable and cannot be certified.

(H20 Br. at 14).

As stated, the reason Plaintiff's attempts to <u>specifically</u> identify the class have not been successful as of yet is because they have been obstructed by H20, which has objected to credit card companies being provided a rider in a subpoena that contains the very credit card numbers issued by the credit card companies that are the subjects of the subpoenas. Contrary to H20's argument, Plaintiff will be able to identify specific class members based on H20's customers' credit card numbers.

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 9 of 24

As to credit card transactions wherein Discover and American Express ("AMEX") cards were used, these cards are their own "bank" and are not issued by third party banks. Because Plaintiff has been provided electronic data by H20 that identifies the Discover and AMEX credit card numbers used in the transaction wherein the expiration date was printed on the receipt – Plaintiff simply needs to subpoena Discover and AMEX entities to obtain the name and address of the cardholder/class member (which are the very subpoenas H20 has opposed and then claimed the class is not ascertainable or identifiable) As to VISA, MasterCard, Diners Club, and JCB, it is a two-step process. First, a subpoena is served on the credit card company to obtain a listing of all the banks issuing these credit cards. Second, a subpoena is served on the issuing bank with the customers' credit card number in order to obtain the customers' name and address. In other words, the proposed class is ascertainable and specifically identifiable.

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 10 of 24

Finally, H20 should not be rewarded for its conduct. H20 has sought to preclude Plaintiff from identifying the class and now claims that class cannot be identified. Courts have rejected such attempts to thwart class certification. In *Shurland v. Bacci*, 271 F.R.D. at 145-46, the court addressed the argument that a FACTA class should be decertified based on the difficulty in providing class notice, stating:

> In this case, decertifying the class because class members cannot be identified by name would create a perverse incentive—it would reward a class action defendant for its failure to maintain customer records. . . As the Seventh Circuit noted (albeit in a case where defendants' liability was apparent), "[t]he difficulties defendants complain of are of their own making.... Defendants who had early notice of their possible liability cannot avoid a class suit merely because their own actions have made the class more difficult to identify.... Class actions cannot be defeated by destroying records." *Appleton Electric Co. v. Advance-United Expressways*, 494 F.2d 126, 135, 139 (7th Cir. 1974).

In the instant case, a finding that the class was not ascertainable would also "create a perverse incentive" by rewarding H20 for its purposeful attempts to prevent the class from being specifically identified.

H20 argues that courts "have denied class certification where a defendant's records do not

identify individual purchasers (and putative class members)." (H20 Br. at 11). But the cases cited by H20 are factually inapposite. For example, in *Grimes v. Rave Motion Pictures Birmingham, LLC*, 264 F.R.D. 659, 665 (N.D. Ala. Jan. 29, 2010), the court denied class certification in a FACTA case based on its finding that "defendant does not maintain, nor has it ever maintained, a database or any paper record that preserves information sufficient to allow identification of any member of the proposed class," and therefore, the class could not be ascertained without conducting an individual inquiry as to the merits of each putative class member's claim. (H20 Br. at 9, 11). As discussed above, Plaintiff has obtained the records identifying the credit card numbers and thus will be able to determine the identity of the class members, making *Grimes* inapplicable on its face.

Other cases relied on by H20 are similarly inapplicable in that here, there is no dispute Plaintiff has been provided with the credit card numbers used in the H20 purchases and will thus be able to identify the class. For example, in *Gist v. Pilot Travel Ctrs., LLC*, 2013 WL 4068788, at *1 (E.D. Ky. Aug. 12, 2013), *see* H20 Br. at 11, plaintiff sought to represent a class all persons who were provided Fleet One[3] credit or debit card receipts from defendant Pilot that did not comply with FACTA. However, defendant (Pilot) did not maintain records that would reflect the names or addresses of individual customers who made purchases with a credit or debit card and did not have records reflecting whether a receipt was printed for a given transaction, what was printed on the receipt, or whether the receipt was given to the customer. *Id.*, at *5. Furthermore, the court found that Fleet's records, which plaintiff subpoenaed to identify the class, did not show whether a receipt was printed or not, and do not show what information would have been on a particular receipt. *Id.*, at *6. The court concluded that individual fact-finding would be required to determine the holder of the card, that holder's possible consumer status, and whether the holder was provided a receipt, would require

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 11 of 24

---

[3] As explained by the court in *Gist*, Fleet Cards, also called billing service cards, are different from typical credit card because in addition to being used for purchases, they can also be used to monitor the location, fuel usage, and other key information about individual trucks. *Gist.*, 2013 WL 4068788, at *1

individual determinations and this the class was not ascertainable. *Id.*

In the instant case, H20 has provided the records that will lead Plaintiff to the names and addresses of the class members, *i.e.*, the credit/debit card numbers. Furthermore, H20 has admitted to providing over 10,000 credit card receipts to persons that displayed the credit card's expiration date. In other words, H20 has a custom and practice of handing its customers credit card receipts.

In *Ticknor v. Rouse's Enterprise, LLC*, 2014 WL 1764738, at *9 (E.D. La. May 2, 2014), *see* H20's Br. at 15, plaintiffs alleged over 14 million transactions in violation of FACTA. The court rejected plaintiff's argument that defendant's business records could be used to confirm membership in the class in part because defendant's business records contained only the last four digits of the credit or debit card number. In the instant case, which involves approximately 78,000 transactions, the business records produced by H20 contain the entire credit card number, making identification of class members ascertainable. Moreover, should the class be certified, the subpoenaed information will identify the owner of the credit/debit card, an entity or a consumer, thereby negating H20's argument consumer argument. *See infra.*

And in *Wooley v. Jackson Hewitt, Inc.*, 2011 WL 1559330, at *1-*2 (N.D. Ill. Apr. 25, 2011), *see* H20 Br. at 9-10, a class action breach of contract case against a tax preparer, the court found individual inquiries would have to be made as to whether tax errors were "preparer-initiated," *i.e.*, Jackson Hewitt's fault, or whether the customer provided erroneous information to Jackson Hewitt. *Id.* at *5. Similarly, in *Stephens v. Gen. Nutrition Cos., Inc.*, 2010 WL 4930335, at *1-2 ((N.D. Ill. Nov. 23, 2010), class action defendant only maintained purchase records for members of GNC's Gold Card Program and therefore the court "would be forced to rely on the memory of each class member and there otherwise unsupported assertions to determine not only which products were purchased, but also the amount of each product that were purchased and the dates at which the products were purchased." *Wooley* and *Stephens* are inapplicable in that no individual inquiry need be made here – H20 has admitted

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 12 of 24

it gave customers receipts with the expiration date printed on the receipt and Plaintiff has the credit

card numbers to specifically identify the class.

H20 claims that *Mowry v. J.P. Morgan Chase Bank, N.A.*, 2007 WL 1772142 (N.D. Ill. June 19,

2007), is "particularly instructive" regarding the issue of identifying class members. (H20 Br. at 13).

H20 is wrong. In *Mowry*, an ATM fee notice class action case brought pursuant to the Electronic

Fund Transfers Act, 15 U.S.C. § 1693, *et seq.*, the court denied class certification in part based on the

court's finding that the class was "unmanageable due to the difficulty of identifying and notifying the

possible twenty million class members." *Id.* at *6. However, the Seventh Circuit's recent decision in

*Hughes v. Kore of IndianaEnterprise, Inc.*, 731 F.3d 672 (7th Cir. 2013) completely undercuts the rationale

of the earlier decided *Mowry* case, also district court case in the Seventh Circuit, and also underscores

that H20's arguments in this regard relate to notice to the class, not membership in the class.

In *Hughes*, also an ATM fee case, the district court de-certified an ATM fee class based in part

on its finding that the requirement of notice to the class members could not be satisfied. *Hughes*, 731

F.3d at 676. The Seventh Circuit noted that ATM's do not store users' names but instead keep track

of transactions by assigning a 10-digit identification numbers, the first six digits identify the users'

bank and the last four identify the user. *Id.* The court further noted defendants' two ATMs were in

college bars and obtaining the identity of all users might require subpoenaing hundreds of banks (the

hometown banks of the students, mostly ex-students, who are class members. *Id.* The Seventh Circuit

solved the dilemma by stating that under Rule 23(c)(2)(B), "when reasonable effort would not suffice

to identify the class members, notice by publication, imperfect though it is, may be substituted." *Id.* at

676-77.

Reduced to its essence, H20's argument is that providing notice to the class in the instant case

may be difficult. But as *Hughes* instructs, under such circumstances where notice cannot be provided

through reasonable effort, notice by publication is permissible. Thus, the *Mowry* court's assertion

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 13 of 24

regarding the unmanageability of providing notice to twenty million class members does not take into account notice by publication, which the subsequently decided and controlling *Hughes* opinion does. *See also Abercrombie*, 280 F.R.D. at 418 ("When individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute") (*quoting Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004); *Shurland*, 271 F.R.D. at 145 ("[i]n instances where the names and addresses of class members are not easily ascertainable, notice by publication alone continues to find support in more recent case law.").

Notwithstanding the subsequently decided and (as to *Mowry*) controlling Seventh Circuit *Hughes* decision, H20 doubles down on *Mowry*, arguing that because Plaintiff has yet to identify any other members of the class through third party subpoenas to a credit card company or any issuing bank "could hardly more clearly confirm *Mowry's* concerns with such an approach." On the contrary, all H20's argument "confirms" is that it seeks to opportunistically parlay its objections to third party credit card subpoenas into a claim that the proposed class cannot be identified.

### A.   No individual determination is necessary as to whether H20 handed credit card receipts to its customers.

H20 next argues that whether each H20 customer that paid with a credit card during the class period was provided a receipt requires an individualized inquiry. (H20 Br. at 15). In support of this argument, H20 cites to *Todd v. Target Corp.*, 2012 WL 1080355, at *4 (N.D. Ill. Mar. 30, 2012) for the following: "if a merchant prints a merchant copy with the banned information but retains the document, then the merchant has not "provided" a receipt to the cardholder at the point of sale (or at all"), and that FACTA liability can attach only where the "merchant intentionally provides a receipt to the customer at the point of sale." (H20 Br. at 15).

Of course, as set forth above, H20's admission that "after June 3, 2008 it provided more than 10,000 persons an electronically printed receipt displaying the credit card's expiration date," *see* Pl.'s Memo. in Supp., Ex. F, at pp. 3-4, makes this argument a nonstarter. H20 has put forth no record

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 14 of 24

evidence, nor could it, to support the claim it does not have a custom and practice of handing its credit card customers their receipts and further, during the class period, all of these receipts printed the expiration date of the person's credit card. Moreover, in *Todd*, the receipt at issue was not the customer receipt but the "merchant" receipt that was apparently handed to the customer. *Todd*, 2012 WL 1080355, at *4. Here, there has been no claim that H20 inadvertently provided its merchant receipt to anyone, making *Todd* inapplicable.

### B.  No individual determination is necessary as to whether class members are customers or businesses.

H20 states that a merchant can be liable under FACTA only where the recipient of the receipt is a consumer, and a consumer for purposes of FACTA is an individual and not a business entity. (H20 Br. at 16). H20 then argues Plaintiff has failed to demonstrate how to identify whether potential class members are consumers rather than businesses and that this makes the class not ascertainable. (H20 Br. at 16). H20's argument fails factually and legally.

FACTA itself does not limit the scope of the prohibition based on the nature of the transaction or of credit card involved-although it does provide other limitations based on the nature of the receipt. *See* 15 U.S.C. § 168lc(g)(2). Had Congress wished to exclude businesses, business credit cards, or transactions for business purposes from FACTA's protections, it certainly could have done so. The language at issue provides that "[a]ny person who...fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer." §§1681 n and o. H20 argues that although it violated FACTA 78,000 times, Plaintiff must separate consumers from businesses for class certification purposes.

The FCRA succinctly defines the word "consumer" for purposes of the statute. § 168la states that, for purposes of FCRA, "The term 'consumer' means an individual." FCRA does not define "consumer" as "an individual acting for non-business purposes," "an individual using a personal credit card," or "an individual whose credit card does not also name a business

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 15 of 24

entity." In contrast to FCRA, for example, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, defines "consumer" far more narrowly. That statute defines "consumer" as follows:

> The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

15 U.S.C. § 1602(h). Thus, that statute requires the subject of a transaction to be for personal purposes in order for it to be a consumer transaction. FACTA and FCRA do not; they merely require the person bringing a cause of action to be an individual. In FACTA, Congress sought to create a comprehensive identify theft prevention statute. It did not draw a distinction between the risk of identity theft from the printing of personal credit card numbers.

In *Shurland*, defendant argued that FACTA differentiates between "consumer" and "business" credit and debit cards by limiting its scope to "consumer" card transactions. *Shurland*, 259 F.R.D. at 160. The court disagreed:

> Defendant's sole source of authority for this proposition comes from a Central District of California opinion denying class certification on the basis that only those who paid the defendant with "consumer" credit or debit cards could recover damages under FACTA and Plaintiff's proposed class was not limited to "consumers." *Najarian v. Avis Rent A Car Sys.*, No. CV 07-588-RGK, 2007 WL 4682071, at *3 (C.D. Cal. June 11, 2007). The opinion itself does not explain the statutory basis for this reasoning, and the plain language of the Act makes no such distinction: "[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C, § 1681c(g). Nor did Congress carve out an exception for "business credit cards" under the Act. While "cardholder" is not specifically defined under FACTA, the term appears in the general provisions of Title 15 and is defined broadly as "any person to whom a credit card is issued or any person who has agreed with the card issuer to pay obligations arising from the issuance of a credit card to another person." 15 U.S.C. § 1602(m). A "person" means "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b). FACTA's protections thus extend to holders of both business and consumer credit cards.

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 16 of 24

*Shurland*, 259 F.R.D. at 160.

Finally, in *Hughes*, the Seventh Circuit addressed the "consumer user" issue as well, albeit in the context of the Electronic Funds Transfer Act, stating:

> The district court added a further twist to the issue of notice by pointing out that the provision of the Electronic Funds Transfer Act that [defendant] is alleged to have violated is applicable only to consumer users of ATMs, 15 U.S.S. § 1693b(d)(3)(A), not to business users, so that it would be necessary to determine which users of [defendant's] ATMs should be excluded from the class. But this problem is more theoretical than real in the circumstances of this case; for it is unlikely that ATMs in bars are commonly used for business transactions.

*Hughes*, 731 F.3d at 677.

Here, it is undisputed that the Plaintiff is a consumer. Moreover, H20 has offered no evidence whatsoever that any of the transactions at issue were business credit card transactions. Instead, it offers only unsubstantiated speculation to try and defeat class certification. In *Bush*, 2012 WL 1016871, at *8, the Court stated:

> The Court notes that in *Shurland I*, the district court for the Northern District of Illinois found that "FACTA's protections ... extend to holders of both business and consumer credit cards." *Shurland I*, 259 F.R.D. at 160. The Court need not determine at this time whether FACTA applies to transactions involving a business credit card because the current record indicates that Bush's credit card was his personal card. Should [defendant] have evidence that indicates otherwise, it may raise that issue at a later stage of the litigation.

In *Shurland*, the court expressly rejected the consumer/business credit card argument and certified a FACTA class, stating that "isolating 'consumer' cardholders from entity cardholders is unlikely to prove insurmountable for class identification purposes, and in any event, should not bar class certification under the circumstances presented here." *Shurland*, 259 F.R.D. at 160-61. As noted by the Seventh Circuit in *Hughes*, "this problem is more theoretical than real in the circumstances of this case." *Hughes*, 731 F.3d at 677.

Finally, and assuming *arguendo* that class membership at some point would have to addressed on the basis of the consumer/business credit card distinction, it is unclear what individual

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 17 of 24

determination the Court will have to be make. The proposed class states "persons" who received printed receipts with the expiration date printed. The responses to the subpoenas by the credit card companies will clearly distinguish between consumers and businesses. If necessary, the Plaintiff will be able to identify the class members for the Court on that basis.

**III.    Contrary to H20's argument, individual issues do not predominate over common issues.**

Predominance requires the "legal or factual questions that qualify each class member's case as a genuine controversy" are "sufficiently cohesive to warrant adjudication by representation." *Buonomo*, 2014 WL 1013841, at *4. Plaintiff has identified the following common fact and legal questions in this case: 1) whether H20 issued approximately 78,000 printed sales or transaction receipts containing customers' credit or debit card expiration dates after June 3, 2008, and thereby violated FACTA; 2) whether H20 had a practice of providing customers with a transaction receipt which failed to comply with the expiration date truncation requirement after June 3, 2008; 3) whether H20's acts or omissions were "willful" (*i.e.*, knowing or reckless) under FACTA; and 4) what amount of statutory damages the Court should order H20 to pay. (*See* Pl.'s Memo. in Supp. at 11).

According to H20, the aforementioned list is incomplete because Plaintiff fails to identify the "actual and proper members of the class" and even if Plaintiff does address issues common to the class, determining which class members are consumers who were provided receipts at the point of sale versus which are businesses is "intractably individualized and fact specific." (H20 Br. at 19). H20 also argues that the task of identifying actual class members would be "a massive undertaking requiring the primary attention of the parties and the Court" and that these "quintessential issues destroy predominance." (H20 Br. at 19).

H20's argument is nothing more than a dressed up version of its ascertainability argument and it fails for the same reasons set forth above. In support of its predominance argument, H20 conflates the concepts of predominance and superiority and then attempts to distinguish *Shurland* but again

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 18 of 24

impermissibly relies on its objections to the service of the subpoenas as a basis to claim the class is not identifiable. First, in *Shurland*, 259 F.R.D. at 159, as to predominance, the court stated common issues of fact and law are "evident on the face of Plaintiff's complaint and inherent in the proposed class definition." The *Shurland* court added that defendant's "creation of computer-generated credit card receipts is uniform across the class" and that "the question of whether that conduct was willful (and consequently whether Defendant is liable) similarly predominates over other individual issues and, indeed, will likely prove the principal common question in this case, given that Defendant concedes that it violated the Act's truncation requirements." *Id.*

In other words, *Shurland* makes clear that the predominance requirement is met in this case. H20 states although *Shurland* did not consider in its predominance analysis the likelihood that individual issues pertaining to class identification would predominate over the common issues, it did do so in its superiority analysis and rejected it defendant's argument that certification is not superior because individual inquiry would be required to determine which potential class members were consumers. (H20 Br. at 20). In particular, the *Shurland* court stated:

> The administrative difficulty of identifying and notifying members of a large class, while an important factor for consideration, will not alone defeat a motion for class certification. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660-61 (7th Cir. 2004). ("The more claimants there are, the more likely a class action is to yield substantial economies in litigation.") While Rule 23(b)(3) entitles class members to reasonable notice and the opportunity to opt out of the litigation, these requirements may be met through a variety of means, including, if other methods do not work, publication. *Mirfasihi v. Fleet Mortgage Co.*, 356 F.3d 781, 786 (7th Cir. 2004) (publication notice approved for class of 1.4 million members where defendants' records were incomplete). Many courts, including this one, have certified classes under nearly identical circumstances, where the identities of individual class members were not yet ascertained. *E.g., Beringer*, 2008 WL 4390626, at \*6; *Redmon*, 249 F.R.D. at 297-98; *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp.2d 831, 835 (N.D. Ill.2008); *Harris v. Best Buy Co., Inc.*, 254 F.R.D. 82 84, 90 (N.D. Ill. 2008). Further, as Plaintiff points out, class discovery has not yet begun in this case, and Plaintiff will likely gain additional information in the form of records from third-party Defendant National Translink. Indeed, Plaintiff has already obtained some records related to the alleged violations with details identifying individual card users.

*Shurland*, 259 F.R.D. at 160.

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 19 of 24

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 20 of 24

H20 seizes on the statement in *Shurland* that class discovery had not yet begun and that plaintiff would likely gain information in the form of records from a third party with details identifying individual card users and that "isolating 'consumer' cardholders from entity cardholders is unlikely to prove insurmountable for class identification purposes." *Shurland*, 259 F.R.D. at 160. In an attempt to distinguish *Shurland*, H20 offers that in the instant case, "class discovery has been completed, and yet Camasta has not shown this Court any evidence that could identify purchasers or demonstrate whether such purchasers were individual 'consumers' who were 'provided' with non-compliant receipts." (H20 Br. at 20). Contrary to H20's assertion, class discovery has not yet been completed due to the fact that H20 has objected and continues to object to any subpoenas that contain the credit card numbers of the putative class members that will identify the class and also identify consumers. As stated above, Judge Martin has continued the consideration of the service of these subpoenas until after the class certification hearing. That H20 has delayed the service of these subpoenas (and thus acquisition of the information the subpoena respondents will provide that will serve to identify the class) does not somehow preclude the class being identified. On the contrary, once the class is certified, and Judge Martin permits Plaintiff to serve the subpoenas, the class will be identified. Thus, the statement in *Shurland* is applicable in the instant case – "isolating 'consumer' cardholders from entity cardholders is unlikely to prove insurmountable for class identification purposes." *Shurland*, 259 F.R.D. at 160.

Finally, H20 argues that even if it is reasonable to presume that almost all or nearly all potential class members were individual consumers who were provided with a receipt at the point of sale, the court in *Ticknor*, 2014 WL 1764738, at *8, rejected such an argument, finding that the "frequency or infrequency which class members prove these elements does not lessen Plaintiff's burden of proof as to these individualized issues." (H20 Br. at 21). However, in *Ticknor*, at *7, the district court also stated that "common issues predominate 'where individual factual determinations can be

accomplished using computer records, clerical assistance, and objective criteria – thus rendering unnecessary an evidentiary hearing on each claim." In the instant case, Plaintiff possesses the computer records, *i.e.*, the full credit card numbers, that render unnecessary and evidentiary hearing on each claim.

**IV.    H20's claim that Plaintiff will not fairly and adequately represent the interests of the class fails as a matter of law.**

H20's argument that Plaintiff Camasta will not fairly and adequately represent the class is premised on nothing more than H20's speculation and its claim that Plaintiff should have informed H20 of its FACTA violation rather than file suit. (H20 Br. at 21). According to H20, Plaintiff should have asked H20 before it printed the receipt whether credit card numbers or expiration dates were printed on store receipts and, if so, should have declined to take the receipt and further, that he should have contacted H20 "to inform the company that its receipts may not be FACTA compliant" rather than filing suit. H20 further asserts that Camasta is a professional Plaintiff which somehow makes him an inadequate class representative. (H20 Br. at 21).

First, as to H20's arguments regarding Plaintiff's responsibilities, H20 has it backwards – it is H20's responsibility to comply with FACTA. Plaintiff is not an insurer of such compliance by H20 nor is he H20's agent. Per H20's argument, the first duty of all plaintiffs that are the victim of a statutory violation of a statute such, as FACTA, is to inform the perpetrator of its offense and, if the victim fails to do so, he or she somehow becomes an inadequate class representative. In short, this argument is a non-starter.

Second, while H20 may think that leveling the charge that a class action plaintiff is a "professional plaintiff" somehow scuttles class certification or makes the class representative inadequate, the Seventh Circuit disagrees. In *Murray v. GMAC*, 434 F.3d 948, 954 (7th Cir. 2006), in response to the argument made in opposition to class certification that the plaintiff in that case was a "professional plaintiff," the court stated:

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 21 of 24

> [w]hat the district judge did not explain, though, is why 'professional' is a dirty word.
> It implies experience, if not expertise. The district judge did not cite a single decision
> supporting the proposition that someone whose rights have been violated by 50
> different persons may only sue a subset of the offenders. Neither does GMAC
> [defendant].

*Murray*, 434 F.3d at 954. Here as well, H20 doesn't really make an argument; it simply complains it

was sued by a "professional Plaintiff." Such an allegation, even if it were true, does not militate against

class certification. In fact, per the Seventh Circuit in *Murray*, just the opposite is true.

**V.     H20's superiority argument, which is just a retread of its failed ascertainability arguments, fails as a matter of law.**

H20 argues that a class action is not a superior method for the fair and efficient adjudication

of this lawsuit for the following reasons (1) individual inquiries are necessary to determine whether a

class member is a "consumer" who was "provided" with a receipt at the point of sale; (2) Plaintiff has

"provided no guidance" as to how class members will be identified and provided notice; and (3)

because FACTA provides for statutory damages up to $1000 and attorneys' fees for individuals to

seek recovery on an individual basis, a class action is not superior.  (H20 Br. at 23-24).  H20's

arguments are factually unsupportable and are contrary to the weight of authority.

H20's first two arguments are again retreads of arguments already addressed. Moreover, H20

fails to cite to that portion of section 2-801 that addresses a "superiority" requirement. *See* 735 ILCS

§ 5/2-801. Finally, H20's argument is simply wrong. "FACTA claims are especially well-suited to

resolution in a class action where, as here, potential recovery is too slight to support individual suits,

but injury is substantial in the aggregate." *Cicilline v. Jewell Food Stores*, 542 F. Supp.2d 831, 839 (N.D.

Ill. 2008) *(citing Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 215-16 (N.D. Ill. 2008); *see also Matthews*

*v. United Retail, Inc.*, 248 F.R.D. 210, 216 (N.D. Ill. 2008) (same)

In *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290, 297 (N.D. Ill. 2008), in response to

defendant's argument in a FACTA case that because statutory awards and the availability of attorney's

fees created sufficient incentive for consumers to vindicate their rights individually through a lawsuit,

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 22 of 24

and those who were actually harmed through identity theft stand to be awarded more than the

statutory damages cap, the court stated:

> [t]he Seventh Circuit has held Rule 23(b)(3) "was designed for" FCRA violations such as this, where there is a large number of potential class members and but only a small chance to prove large, individual damages. *GMAC*, 434 F.3d at 953. Accordingly, a class action is superior to other forms of litigation for the resolution of the issues raised in this case.

And in *Hughes*, the Seventh Circuit discussed the utility of class actions in statutory damages

cases, stating (in the context of an Electronic Funds Transfer Act case):

> A class action, like litigation in general, has a deterrent as well as a compensatory objective. See, e.g., 1 Rubenstein, *et al., supra*, §§ 1:7–8. "[S]ociety may gain from the deterrent effect of financial awards. The practical alternative to class litigation is punitive damages, not a fusillade of small-stakes claims." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948,953 (7th Cir. 2006). The deterrent objective of the Electronic Funds Transfer Act is apparent in the provision of statutory damages, since if only actual damages could be awarded, the providers of ATM services such as Kore might have little incentive to comply with the law.

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 23 of 24

*Hughes*, 731 F.3d at 677.

Finally, in *Armes v. Sogro, Inc.*, 2011 WL 1197537, at *6 (E.D. Wis. Mar.29, 2011), the court

expressly rejected the argument made by H20:

> [Defendant] submits that FACTA encourages individuals to file their own lawsuits because in addition to statutory damages, FACTA provides for recovery or attorneys' fees and punitive damages. This court disagrees. Where statutory damages may be $100 to $1000, how many individuals will spend $350 to file a federal action, expend time and effort in pursuing the case, and risk *owing* costs to the defendant? Few. See Cicilline, 542 F. Supp.2d at 840. ("[F]or most potential class members, there are no actual damages and the recovery would by tiny relative to the expense of litigation on an individual basis." (internal quotation marks omitted)).

In sum, H20's superiority argument fails.

## CONCLUSION

The proposed class satisfies the requirements of 735 ILCS § 5/2-801. Plaintiff requests that

the Court: (1) grant Plaintiff's Motion for Class Certification, (2) appoint Plaintiff as the class

representative, and (3) appoint Plaintiff's attorneys as class counsel.

Dated: July 8, 2014

Respectfully submitted,

PATRICK CAMASTA, individually and as the
representative of a class of similarly-situated persons

By:     s/ Brian J. Wanca
        One of its attorneys

Brian J. Wanca                          Phillip A. Bock
Wallace C. Solberg                      James M. Smith
ANDERSON + WANCA                        Julia L. Titolo
3701 Algonquin Road, Suite 760          BOCK & HATCH, LLC (#44533)
Rolling Meadows, IL 60008               134 N. La Salle Street, Suite 1000
Telephone: 847/368-1500                 Chicago, IL 60602
                                        Telephone: (312) 658-5500

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 24 of 24

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on July 8, 2014, (s)he caused a copy of the
foregoing brief in support of class certification to be served upon Defendant's counsel by emailing to
the below listed email address(es) and depositing same before 5:00 p.m. in an official U.S. Mailbox,
postage prepaid, and addressed as follows:

Francis A. Citera - citeraf@gtlaw.com
Brett Doran - doranb@gtlaw.com
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601

                                        s/ Brian J. Wanca
                                        Brian J. Wanca

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
CALENDAR: 13
PAGE 1 of 18
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT J

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 2 of 18

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

PATRICK CAMASTA, individually and on
behalf of a class,

            Plaintiff,

            v.

H2O PLUS, LLC,

            Defendant.

No.  09 CH 40180

## PLAINTIFF'S MOTION FOR LEAVE TO SERVE SUBPOENAS

NOW COMES Plaintiff PATRICK CAMASTA, by and through his attorneys, Anderson + Wanca, and petitions the Court for Leave to Serve Subpoenas, and in support of its Petition, Plaintiff states as follows:

1.    This action concerns Defendant H2O Plus, LLC ("H2O")'s violations of the Fair and Accurate Credit Transactions Act ("FACTA"). Specifically, Plaintiff alleges that H2O printed the expiration date of certain customers' credit cards on its receipts after June 3, 2008 in violation of the statute.

2.    On May 17, 2012, the Court entered an Agreed Protective Order ("APO"), attached hereto as Exhibit 1, regarding confidential information. Paragraph 6 of the APO provides that Confidential Information can only be provided to "Qualified Persons." (Ex. 1, ¶ 6.) Paragraph 6(h) defines a Qualified Person as "such other persons as hereafter may be designated by written agreement of all Parties in this Litigation or by order of the Court upon noticed motion." (Ex. 1, ¶ 6(h)).

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 3 of 18

3.      Plaintiff has brought this case as a class action. In order to certify the class, Plaintiff is required to demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members; (3) the representative will fairly and adequately protect the interests of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS § 5/2-801. Plaintiff need also demonstrate that the class is ascertainable. "Class members need not be ascertained prior to certification," as long as they are "ascertainable at some point in the case." *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 558 (C.D. Cal. 2012); *see also Saltzman v. Pella Corp.*, 257 F.R.D. 471, 475-76 (N.D. Ill. 2009).

4.      In response to Plaintiff's production requests, H2O has produced electronic data containing the credit card numbers of putative class members. In order to identify class members using Discover and American Express ("AMEX") credit cards, Plaintiff needs to serve a subpoena on each of these institutions along with the last four digits of the credit card numbers provided by H2O, *i.e.*, 1234, and if the credit card holders cannot be identified by these last four numbers, to then provide the entire credit card number. In this fashion, Plaintiff can identify the class.

5.      The electronic data produced by H2O containing the credit card numbers of H2O's customers (the putative class members) was designated confidential by H2O. Therefore, prior to serving the subpoena's containing the last four digits of the Discover and AMEX credit card holders, Plaintiff's counsel (Wallace Solberg) sent to Defense counsel (Brett Doran) the Rider to the Subpoena to be served on Discover containing the truncated credit card numbers (last four digits) of the Discover Card holders. The Rider to AMEX will contain the same information,

*i.e.*, the last four numbers of the credit card, but would be on a disk to the large amount of AMEX credit numbers disclosed. Counsel for the parties discussed the matter and H2O's position is that before serving the subpoenas, Plaintiff would need to seek leave of the Court, pursuant to Paragraph 6(h) of the APO, to have Discover and AMEX be designated as "Qualified Persons."

6.    Plaintiff's position is contrary to that of H2O because the information sought in the subpoenas is already in the possession of Discover and AMEX deeming them as Qualified Persons is unnecessary. In other words, Discover and AMEX already know the identity of their own card holders by card number. While Plaintiff has no objection to the designation of the information as confidential, Plaintiff should be permitted to serve the subpoenas with the "truncated" card numbers listed. Plaintiff will also serve with the subpoenas the APO to Discover and AMEX for signature. Thereafter, if Discover and AMEX assert they cannot identify their card holders without the entire credit card number (which Plaintiff anticipates will be the case), Plaintiff should be permitted to send Discover and AMEX an Amended Rider containing the entire credit card number.

7.    Alternatively, Plaintiff requests that Discover and AMEX be designated as "Qualified Persons" pursuant to Paragraph 6(h) of the APO, and thereafter be provided with the subpoena and rider containing the full credit card numbers.

8.    Plaintiff is required to demonstrate that the class is ascertainable. The relief requested will enable Plaintiff to demonstrate ascertainability of the class.

WHEREFORE, Plaintiff requests an Order from the Court granting it leave to serve subpoenas on Discover and AMEX containing the last four digits of their card holders' credit card numbers, along with the APO, and thereafter, an amended rider containing the full credit

3

card numbers. Alternatively, Plaintiff requests that Discover and AMEX be designated as "Qualified Persons" pursuant to Paragraph 6(h) of the APO, and thereafter be provided with the subpoena and rider containing the full credit card numbers.

<div style="margin-left: 40%;">

Respectfully submitted,

PATRICK CAMASTA, individually and as the representative of a class of similarly-situated persons,

By: _Wallace C. Solberg_
One of the Attorneys for Plaintiff

</div>

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 5 of 18

| Brian J. Wanca | Phillip A. Bock |
|---|---|
| Wallace C. Solberg | BOCK & HATCH, LLC |
| ANDERSON + WANCA | 134 N. LaSalle Street, Suite 1000 |
| 3701 Algonquin Road, Suite 760 | Chicago, IL 60602 |
| Rolling Meadows, IL 60008 | Telephone: 312/658-5500 |
| Telephone: 847/368-1500 | Firm I.D. No.: 44533 |
| Firm I.D. No.: 51306 | |

<div style="text-align: center;">4</div>

## CERTIFICATE OF SERVICE

I, the undersigned, state that on January 7, 2014, I served a true and correct copy of this

Notice on the party listed below, via:

- ☐ Personal service
- ☐ U.S. mail, by depositing it in the U.S. mail at Rolling Meadows, IL, at or before 5:00 p.m., with proper postage prepaid to the address listed above
- ☐ Overnight delivery to the address listed above
- ☒ Facsimile machine from Rolling Meadows, IL, to the telephone number listed above
- ☒ Electronic mail to the e-mail address(es) listed above.

Brett M. Doran
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
F: 312-456-8435
Email: doranb@gtlaw.com

[X] Under penalties as provided by law pursuant
to 735 ILCS 5/1-109, I certify that the statements
set forth herein are true and correct.

Wallace C. Solberg

Brian J. Wanca
Wallace C. Solberg
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500

Phillip A. Bock
Bock & Hatch
134 North LaSalle Street, #1000
Chicago, IL 60602
Telephone: (312) 658-5500

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 6 of 18

5

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 7 of 18

# EXHIBIT 1

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 8 of 18

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

PATRICK CAMASTA, individually and on
behalf of a class,

                  Plaintiff,

      v.                            No. 09 CH 40180

H2O PLUS, LLC

                  Defendant.

## AGREED PROTECTIVE ORDER

     Pursuant to Illinois Supreme Court Rule 201 (c)(1), the Court being fully advised, and the attorneys for the Plaintiff Patrick Camasta and Defendant H2O Plus, LLC (collectively, the "Parties") having consented to the entry of this Order,

     IT IS HEREBY ORDERED:

     1.     This Agreed Protective Order shall apply to all confidential information produced in this litigation (the "Litigation") by the Parties (hereinafter, "Confidential Information").

     2.     In connection with discovery proceedings in the Litigation, any party to the litigation (the "Designating Party") shall have the right to designate as "Confidential" any information that it in good faith believes embodies any of its private commercial, business, financial, research, personnel or proprietary information.

     3.     As used herein, Confidential Information may include, but is not limited to, (a) documents (as defined in Illinois Supreme Court Rule 201 (b)(1)), interrogatories, requests for admission, and answers thereto; (b) transcripts of depositions and exhibits thereto; (c) any pleading, affidavit, declaration, brief, motion, or other writing containing, reflecting, or disclosing such Confidential Information; and (d) all copies, abstracts, excerpts, analyses, and

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 9 of 18

complete or partial summaries prepared from or containing, reflecting, or disclosing such Confidential Information.

4.    Confidential Information may be disclosed only to "Qualified Persons," as that term is defined in Paragraph 6 below, and may be used only in connection with the Litigation and for no other purpose. All Qualified Persons receiving Confidential Information shall be bound by the terms of this Agreed Protective Order.

5.    (a)    Documents and information provided during the discovery process in this lawsuit may be designated as Confidential Information by the party producing such document or information by stamping or labeling each page thereof containing such Confidential Information with the legend "Confidential" at the time such information is provided. Any party may also designate any document as Confidential after it has been provided in discovery by notifying all other Parties in writing of that designation within a reasonable time after determining that it was inadvertently produced without a Confidential designation. In the event any party designates any document as Confidential Information after it has been provided in discovery, it shall be treated as such upon receipt of such notice, and all copies of the document or information within the custody or control of the party shall be stamped or labeled with the legend "Confidential."

(b)    Any party may designate any deposition testimony as Confidential Information by stating on the record during the deposition which portions of the testimony it considers to be confidential. The Designating Party shall instruct the court reporter to transcribe confidential testimony as a separate transcript and mark it with the following notation: "This transcript contains confidential information." Any party may also designate any testimony as Confidential Information by notifying all other Parties in writing of that designation within 28 days of receipt of the transcript. Such designation shall identify the specific page and line numbers of the

-2-

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 10 of 18

testimony at issue. Such testimony shall be treated as Confidential Information upon receipt of such notice.

c) Any party may designate as "Confidential" any document produced by that party prior to the date of entry of this Agreed Protective Order, by so designating within 30 days of entry of this Agreed Protective Order, provided the document satisfies the criteria herein for Confidential Information.

6. Confidential Information may be disclosed to or made available by counsel of record receiving such information only to Qualified Persons. For the purpose of this Agreement, the term "Qualified Persons" means:

(a) this Court (and any appellate court), including court personnel, jurors and alternate jurors;

(b) court reporters involved in the Litigation;

(c) inside and outside counsel to the named Parties to the Litigation, and associate attorneys, paralegals, clerical, secretarial, and other staff employed by such counsel who are involved in this litigation;

(d) the named Parties to the Litigation, limited to two employees of the Parties, who need to know, provided that disclosure to any specific individual is necessary for prosecution or defense of this Litigation;

(e) persons identified in a document designated as "Confidential" as an author of the document in part or in whole, or persons to whom a copy of such document was sent prior to its production in the Litigation;

(f) deponents and trial witnesses other than the named Parties to the Litigation;

(g) independent outside experts, advisors, or consultants (other than employees, officers, or directors of any party) retained by counsel of record in the Litigation; and

(h) such other persons as hereafter may be designated by written agreement of all Parties in this Litigation or by order of the Court upon noticed motion.

7. Prior to any disclosure of Confidential Information to any Qualified Person defined in paragraphs 6(f), 6(g) and 6(h), counsel of record for the party proposing to make such

-3-

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 11 of 18

disclosure shall ensure that a copy of this Agreed Protective Order has been delivered to such person, and shall obtain that person's written agreement to be bound by the terms of this Agreed Protective Order by obtaining an executed confidentiality agreement by that person in the form attached hereto as Exhibit A. Counsel of record for each party shall maintain a list of the names of all persons to whom such documents or information is disclosed, and such list shall be available for inspection by counsel for the party claiming confidentiality upon order of the Court following a showing of good cause.

8. All Qualified Persons who have received Confidential Information pursuant to this Agreed Protective Order shall safeguard such information so as to avoid any disclosure of that information, except as provided in this Agreed Protective Order.

9. The restrictions in this Order shall not apply:

a) To documents or other information which, at or prior to disclosure thereof in this action, is or was a matter of public knowledge or which, after disclosure thereof, becomes a matter of public knowledge other than by act or omission of any of the non-designating Parties; and

b) To any documents or other information not obtained in discovery proceedings in this action or otherwise lawfully acquired by a party hereto without a legally enforceable obligation to maintain the information in confidence.

10. Any party in the litigation to whom Confidential Information is produced or disclosed may object at any time to the "Confidential" designation. The objection shall be made in writing to counsel for the Designating Party. Counsel shall confer in good faith in an effort to resolve any dispute concerning such designation. In the event of a motion concerning the designation of information as "Confidential," all materials whose designation is so objected to shall continue to be treated as Confidential Information until the Court rules to the contrary. No party shall be obligated to challenge the propriety of a Confidential designation at the time made, and a failure to do so shall not preclude a subsequent challenge thereto. No party to this

-4-

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 12 of 18

Litigation shall, by treating information as Confidential, be deemed to have conceded that the information actually is Confidential.

11.     Nothing herein shall prevent any party or third-party who has received Confidential Information pursuant to this Agreement from producing such Confidential Information in response to a lawful subpoena or other compulsory process; provided that any party or third-party receiving such subpoena or other compulsory process; (i) shall as soon as reasonably practical give notice thereof to the Designating Party by telephone and facsimile and shall furnish the Designating Party with a copy of the subpoena or other compulsory process so as to afford the Designating Party a reasonable opportunity to seek a protective order; and (ii) if application for a protective order is made promptly and before the return date, shall not produce such Confidential Information prior to receiving a court order or the consent of the Designating Party. In the event that production of such Confidential Information is made notwithstanding such prompt application for a protective order, it shall continue to be treated as Confidential Information by all persons subject to this Agreed Protective Order unless and until this Court shall otherwise direct.

12.     Except as provided in Paragraph 18 of this Protective Order, no party shall file in the public record any pleading, motion, deposition or other document disclosing Confidential Information without first giving notice to the party who designated the information (the "Designating Party") of its intent to do so by giving notice to the Designating Party of the Confidential Information to be filed. The party must give notice at least seven (7) days prior to filing any Confidential Information in the public record. The Designating Party may ask the Court to order the document containing the Confidential Information or just the Confidential Information be filed under seal. Any such request shall be made by motion filed and served

-5-

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 13 of 18

within two business days of the Designating Party's receipt of the notice provided for by this paragraph. If such a motion is filed, any copy of such filing shall be filed in redacted form until the motion is ruled on except that an unredacted courtesy copy may be delivered to the chambers of the judge presiding over the Litigation. The handling of such document subsequently shall be in accordance with the Court's order. If no such motion is filed within two business days of receipt by the Designating Party of the notice provided for by this paragraph, the filing may be filed and used without restriction.

13. All Confidential Information, and all copies thereof, shall be destroyed or returned to counsel for the Designating Party within thirty (30) days after the final conclusion of the Litigation, including appeals, except that counsel for the plaintiff and the defendants may keep an office file of internal memoranda, discovery responses, pleadings, and briefs notwithstanding that they contain Confidential Information so long as they are kept in accordance with the terms of this Agreed Protective Order.

14. The Parties may at any time stipulate to a modification of this Agreed Protective Order as to any particular portion of the Confidential Information without affecting the continuing validity of this Agreed Protective Order as to any other Confidential Information.

15. This Agreed Protective Order shall be without prejudice to the right of the parties or other persons to: (i) bring before the Court at any time the question of whether any particular document or information is confidential or whether its use should be confidential, or (ii) present a motion to the Court for a separate protective order as to any particular document or information, including restrictions differing from those specified herein. This Agreed Protective Order shall not be deemed to prejudice the parties in any way in any future application for modification of this Order.

-6-

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 14 of 18

16.    In the event any person shall violate or threaten to violate any of the terms hereof, the aggrieved party may seek any appropriate remedy from the Court, and no party hereto shall assert, as a defense to a request for injunctive relief, that the aggrieved party has an adequate remedy at law.

17.    In the event of a disclosure of Confidential Information to a person not authorized to have had such disclosure made to him or her under the provisions of this Agreed Protective Order, the party responsible for having made such disclosure shall immediately procure the return of the material and inform counsel for the designating party whose Confidential Information has thus been disclosed of all relevant information concerning the nature and circumstances of such disclosure. The responsible party shall also take all reasonable measures promptly to ensure that no further or greater unauthorized disclosure of the Confidential Information occurs.

18.    The inadvertent production of any confidential, privileged or attorney work product documents shall be without prejudice to any claims that the document is confidential or privileged and shall constitute neither a waiver of any claim or privilege that may otherwise attach thereto nor a general waiver of such claim or privilege. Upon demand of the producing party, all copies of any inadvertently produced document shall be returned forthwith, and such documents shall not be introduced into evidence, or subject to production, in this or any other proceeding without the consent of the producing party.

19.    Nothing in this Agreed Protective Order shall prevent any party from objecting to discovery that it believes is improper.

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 15 of 18

20.    The provisions and terms of this Agreed Protective Order shall not terminate at the conclusion of the Litigation.

21.    Until this Agreed Protective Order has been signed by the Court, it shall be effective as an agreement among the Parties immediately upon its execution by counsel of record for all Parties.

22.    This Agreed Protective Order shall not govern the use of documents and information at trial, class certification hearing, or arbitration. The Parties may seek the entry of an appropriate protective order prior to the commencement of any such trial, hearing, or arbitration.

23.    The Parties' agreement set forth in this Order shall be construed and enforced in accordance with the laws of the State of Illinois.

24.    The Parties' agreement set forth in this Order constitutes the entire Agreement between the Parties with respect to the confidentiality of Confidential Information and supersedes any prior understandings or representations relating to the subject mater hereof, and shall not be subject to change or amendment except by subsequent agreement by the parties and entered into by this Court.

AGREED TO:

Wallace Solberg
ANDERSON & WANCA
3701 Algonquin Rd., Suite 760
Rolling Meadows, Illinois 60008
Attorney for Plaintiff Patrick Camasta

Francis A. Citera
Matthew S. Gray
GREENBERG TRAURIG, LLP
77 West Wacker Drive
Suite 3100
Chicago, Illinois 60601
Attorneys for Defendant H2O Plus, LLC



-8-

SO ORDERED, this ___ day of _____, 2012.

_____
The Honorable Leroy K. Martin Jr.

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 16 of 18

-9-

# ANDERSON + WANCA
## ATTORNEYS AT LAW

3701 ALGONQUIN ROAD, SUITE 760, ROLLING MEADOWS, IL 60008
TEL: (847) 368-1500 • FAX: (847) 368-1501
EMAIL: BUSLIT@ANDERSONWANCA.COM

January 7, 2014

CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Richard J. Daley Center
Judge LeRoy K. Martin, Jr.
50 West Washington Street
Chicago, IL 60602

      Re:   <u>Patrick Camasta v. H20 Plus, LLC</u>
              Case No. 09 CH 40180

Dear Judge Martin, Jr.:

     Enclosed please find a courtesy copy of Plaintiff's Motion for Leave to Serve Subpoenas.

                     Very truly yours,

                     ANDERSON + WANCA

                     *Wallace C. Solberg*

                     Wallace C. Solberg

WCS/kw
Enclosure

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 17 of 18

```
                    ┌─────────────────────────────────────┐
                    │  TRANSMISSION VERIFICATION REPORT    │
                    └─────────────────────────────────────┘

                                        TIME  : 01/07/2014 16:52
                                        NAME  : ANDERSON WANCA
                                        FAX   : 8473681501
                                        TEL   : 8473681500
                                        SER. # : C8J641743


        DATE,TIME                01/07  15:50
        FAX NO./NAME             13124568435
        DURATION                 00:01:35
        PAGE(S)                  08
        RESULT                   OK
        MODE                     STANDARD
                                 ECM
```

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 18 of 18

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

PATRICK CAMASTA, individually and on
behalf of a class,

          *Plaintiff,*

          v.

H2O PLUS, LLC,

          *Defendant.*

No.  09 CH 40180

### PLAINTIFF'S MOTION FOR LEAVE TO SERVE SUBPOENAS

NOW COMES Plaintiff PATRICK CAMASTA, by and through his attorneys, Anderson

+ Wanca, and petitions the Court for Leave to Serve Subpoenas, and in support of its Petition,

Plaintiff states as follows:

    1.     This action concerns Defendant H2O Plus, LLC ("H2O")'s violations of the Fair

and Accurate Credit Transactions Act ("FACTA"). Specifically, Plaintiff alleges that H2O

printed the expiration date of certain customers' credit cards on its receipts after June 3, 2008 in

violation of the statute.

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
CALENDAR: 13
PAGE 1 of 2
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT K

Order                                                      (2/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Camasta

v.                                    No. 09 CH 40180

H2O Plus LLC

### ORDER

This cause coming to be heard before the Court, the parties appearing and the Court being fully advised in the premises, it is ordered:

1) Case continued for status on February 4, 2014 at 9:30 am.

7/8/2014 5:29 PM
2009-CH-40180
PAGE 2 of 2

Atty. No.: 36511

Name: Greenberg Traurig

Atty. for: H2O Plus

Address: 77 W Wacker #3100

City/State/Zip: Chicago IL 60601

Telephone: 312 456 8400

ENTERED: Judge LeRoy K. Martin, Jr.

Dated: JAN 08 2014

Circuit Court - 1844

Judge                          Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Copy Distribution - White: 1. ORIGINAL - COURT FILE  Canary: 2. COPY  Pink: 3. COPY

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
CALENDAR: 13
PAGE 1 of 20
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT M

STATE OF ILLINOIS )
                ) SS:
COUNTY OF COOK )

    IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
      COUNTY DEPARTMENT – CHANCERY DIVISION

PATRICK CAMASTA, )
individually and on behalf )
of a class, )
                )
      Plaintiff, )
                )
    vs. ) No. 09 CH 40180
                )
H2O PLUS, LLC, and H2O )
ENTERPRISES, LLC, )
                )
      Defendants. )

    The discovery deposition of TODD KEENAN, taken before Theresa Harris, a Certified Shorthand Reporter in the State of Illinois, pursuant to the provisions of the Illinois Code of Civil Procedure of the Supreme Court thereof, pertaining to the taking of depositions for the purpose of discovery, at 3701 Algonquin Road, Suite 760, Rolling Meadows, Illinois, commencing at the hour of 2:00 p.m. on the 6th day of June, A.D., 2013.

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 2 of 20

Page 2

```
 1        APPEARANCES:

 2            ANDERSON + WANCA
              BY:  MR. WALLACE C. SOLBERG
 3            3701 Algonquin Road
              Suite 760
 4            Rolling Meadows, Illinois  60008
              (847) 368-1500
 5            wsolberg@andersonwanca.com

 6                Appeared on behalf of Plaintiff;

 7

 8            GREENBERG TRAURIG, LLP
              BY:  MR. BRETT M. DORAN
 9            77 West Wacker Drive
              Suite 3100
10            Chicago, Illinois  60601
              (312) 456-1021
11            doranb@gtlaw.com

12                Appeared on behalf of Defendants.

13                        * * *

14

15

16

17

18

19

20

21

22

23

24
```

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 3 of 20

Page 3

```
1                    I  N  D  E  X

2    WITNESS                              PAGE
     TODD KEENAN
3
        Examination by Mr.Solberg            4
4       Examination by Mr. Doran            98

5       Further Examination by Mr. Solberg  100

6

7

8              E   X   H   I   B   I   T   S

9

10   EXHIBIT NUMBER          MARKED FOR IDENTIFICATION

11   No. 1                            16
     No. 2                            76
12   No. 6                            31
     No. 9                            39
13   No. 12                           17
     No. 16                           32
14   No. 46                           82
     No. 47                           84
15   No. 49                           74
     No. 50                           80
16   No. 51                           40
     No. 52                           101
17

18

19

20

21

22

23

24
```

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 4 of 20

Page 84

1   responsibility regarding creating this exhibit,

2   Exhibit 46?

3         A.   I don't recall assigning anybody

4   responsibility.

5              (Whereupon, Exhibit No. 47 was

6              premarked for identification.)

7   BY MR. SOLBERG:

8         Q.   Let me hand you -- we're done with that

9   one.  Let me hand you what's been marked

10  Exhibit 47 --

11        A.   Okay.

12        Q.   -- and ask you to take a look at that.  As

13  you look at that, I'll tell you my question is going

14  to be the same, have you ever seen this particular

15  exhibit?

16        A.   I have not.

17        Q.   And for the record, Exhibit 47 is H2O

18  1151.

19              If you were -- in your position as manager

20  and then director at H2O Plus, if you were to try to

21  go about identifying which customers had received

22  receipts between June 3rd of 2008 and October

23  of 2009 that had the expiration date printed on

24  them, how would you go about doing that?

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 5 of 20

Page 85

1      MR. DORAN:  Objection.  Calls for speculation.

2      MR. SOLBERG:  I think it goes to his -- he

3    either knows how to do it or he doesn't.

4      THE WITNESS:  I wouldn't know how to do that

5    because that would require knowledge of the inner

6    workings of the point-of-sale system.  All I had

7    privy to me was the output from that system, and

8    that information was not anywhere in that data that

9    was provided to us.

10   BY MR. SOLBERG:

11     Q.   Is there a -- there's a class of customer

12   at H20 Plus, special customers.  What's the term for

13   that, do you know?

14     A.   H20 Plus had a loyalty program called the

15   Plus Member Program.

16     Q.   And what kind of data did you maintain

17   regarding members of the Plus Member Program?

18     A.   Their name, contact information, and

19   purchase history.

20     Q.   And did you keep track -- their purchase

21   history, would that identify the dates in which they

22   purchased product?

23     MR. DORAN:  Objection.  Are we talking about

24   records that he personally maintained or that H20

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 6 of 20

Page 86

1   Plus maintained?

2       MR. SOLBERG:  That H2O Plus maintains, and he

3   answered what they do have.

4       THE WITNESS:  Those transaction records do

5   exist.

6   BY MR. SOLBERG:

7       Q.   What kind of software is used to maintain

8   those records?

9       A.   Those are in an archive format.  They are

10  in a zip file, and within that zip file are

11  individual files for each register and store for

12  each day in a format that can be read by the FoxPro

13  Database software.

14      Q.   So the answer to my question, again, if I

15  wanted to go to a -- what's the term, Plus Member?

16      A.   Uh-huh.

17      Q.   If I wanted to go look at the purchase

18  history of a Plus Member from June 3rd to October --

19  June 3rd, 2008, to October 31st, 2009, and I wanted

20  to see how many purchases each Plus Member made and

21  when they made those purchases, I could do that

22  based on the data that H2O Plus maintains; is that

23  correct?

24      A.   Correct.

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 7 of 20

Page 87

1    Q.   Do you know how many Plus Members there

2    are?

3    A.   I do not recall.

4    Q.   And would this particular program yield

5    that information rather easily?

6    A.   The Plus Member data is stored in -- the

7    Plus Member data is stored in two places.   There's

8    the individual files, and there's a database that

9    has the Plus Member number and purchase date and

10   item purchased, which I believe was part of the

11   discovery.

12   Q.   When, do you recall?   And do you recall,

13   by the way, that there were two groupings of

14   documents produced?   There were the original

15   documents that we've been walking through that, for

16   instance, have the email chain; and later on, I

17   believe in the summer of 2012, there was a

18   subsequent electronic production.

19        Do you recall having any involvement in

20   that subsequent electronic production?

21   A.   Can you provide the date of the electronic

22   production, because I was involved in an electronic

23   production, but if it was after when I left, I

24   wouldn't have been involved.

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 8 of 20

Page 88

1      Q.   Well, you just testified that the

2  information regarding -- I thought you testified,

3  and you correct me if I'm wrong, that the

4  information regarding Plus Members was already

5  produced at discovery.  Did you say that?

6      A.   I did.

7      Q.   And what documents are you referring to?

8      A.   It would have been provided electronically

9  in a -- and, actually, while I haven't seen this

10 document, the zip file referenced in Exhibit 47 I

11 would have provided.

12     Q.   And you -- your testimony is that the Plus

13 Member data should be, or is, in this particular zip

14 file regarding Heartland transaction summaries?

15     A.   It is not in the Heartland transaction

16 summaries, but when this was provided, there was

17 another zip file that contained the individual

18 transaction data.

19     Q.   For whom, just the Plus Members or for

20 everybody?

21     A.   It had -- it contained all transaction

22 detail with only identifying information for Plus

23 Members.

24     Q.   Is there any other software that you're

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 9 of 20

1    aware of that H2O Plus uses to store data regarding

2    its customers or its sales?  You had just mentioned

3    Fox whatever that was.  FoxPro.  Is there any other

4    data that H2O Plus uses -- data software storage?

5         A.    Currently --

6         Q.    No --

7         A.    -- or at this particular point in time?

8         Q.    -- at that point in time.

9         A.    At what point in time are we talking

10   about, just so I can think about what was in place

11   at that time.

12        Q.    October -- June 3rd, 2008, to

13   October 31st, 2009.

14        A.    I believe at that point in time there was

15   a piece of software called Magic.

16        Q.    What did that store?

17        A.    Aggregate details of store transaction

18   history, but I don't believe that contained any

19   individual Plus Member data.

20        Q.    The data that you mentioned, if I wanted

21   to see all the purchases made by a Plus Member

22   between June 3rd, 2008, and October 31st, 2009, how

23   would I access that information using the electronic

24   data you're referring to?

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 10 of 20

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 11 of 20

1      A.    The files that were provided, those files

2    would need to be compiled, because they are per

3    store per day, so a program would have to be written

4    to open up each zip file, read the data, place it

5    into some aggregated location.

6      Q.    And again, your testimony is that we

7    already have that data, it's just a matter of

8    manipulating the data or coming up with a program to

9    access that information?

10      A.    To the best of my knowledge.

11      Q.    What about non-Plus Members, just the guy

12    off the street, is there any way to be able to

13    determine who that individual is and what date he

14    purchased product from H2O?

15      A.    Not to my knowledge.

16      Q.    If we had -- strike that.

17            With the data that is maintained by H2O,

18    if we have a credit card number -- well, strike that

19    again.

20            Let me ask this, does H2O keep track of

21    the credit card numbers of individuals?  And I'm

22    just referring to them as individuals off the

23    street, which is another way of saying not a Plus

24    Member.

Page 91

1          The individual off the street, do you

2    maintain his credit card number --

3          MR. DORAN:  Objection.

4    BY MR. SOLBERG:

5          Q.    -- for purchases that have been made?

6          MR. DORAN:  Objection.  I want to make sure

7    that we're still talking about the time frame.

8          MR. SOLBERG:  Absolutely.  Every question I'm

9    asking relates to June 3rd, 2008, to October 31st,

10   2009.

11         MR. DORAN:  Okay.

12         MR. SOLBERG:  And data from that particular

13   time frame.

14         THE WITNESS:  To the best of my knowledge, the

15   transaction could be associated with a credit card

16   number, but not an individual name or any

17   identifying information.

18   BY MR. SOLBERG:

19         Q.    To the best of your knowledge, how would

20   we acquire that identifying information, where would

21   we have to go in order to get that?

22         A.    I have no idea.

23         Q.    Regarding the number of H2O Plus Members

24   that H2O had in the same time frame, June of '08 to

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 12 of 20

Page 92

1    October of 2009, whose responsibility at H2O at that

2    particular time would it be to know how many Plus

3    Members there were?

4         A.   I believe that would have fallen on Jim

5    McLaughlin's area of responsibility.

6         Q.   Anybody else besides him?

7         A.   Not that I recall or am aware of.

8         MR. SOLBERG:  Let's take five, if we could, and

9    then I think we're --

10        MR. DORAN:  Okay.

11        MR. SOLBERG:  -- close to finishing here.

12        MR. DORAN:  Sure.

13             (Whereupon, a break was taken.)

14   BY MR. SOLBERG:

15        Q.   Mr. Keenan, I believe you testified that

16   you left the employ of H2O in 2012; is that correct?

17        A.   Yes.

18        Q.   What month?

19        A.   July.

20        Q.   And the data I was referring to, the

21   electronic data, I believe that was produced in June

22   of 2012.

23        A.   Okay.

24        Q.   Does that refresh your recollection as to

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 13 of 20

Page 93

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 14 of 20

1    whether you had any involve -- or that's the data

2    you were referring to --

3        A.    Yes.

4        Q.    -- regarding the Plus Members?

5              Yes?

6        A.    That would be the data that I was

7    referring to, yes.

8        Q.    And one more time, what has to be done to

9    that data to identify the Plus Members and marry

10    them to their purchases and the date of purchases?

11        A.    Okay.  I can explain it.  It's going to be

12    a little lengthy.  The way the data was received

13    from the point-of-sale system, each -- transactions

14    for each day were broken into several different

15    files.

16              You had a header file, which would have

17    been the transaction information, the time the

18    transaction took -- that file would contain a row of

19    data that would list the time the transaction took

20    place, potentially the Plus Member number, if it was

21    for a Plus Member customer.  I don't recall all the

22    fields, but total sales dollars, total tax amount,

23    et cetera.

24              Then there is a second file that would be

Page 94

1   the detail, if I recall correctly, that would have

2   the quantity of each item that was purchased as well

3   as the sales price for each item.

4        Q.   As you're explaining this, is that --

5   that's not just Plus Members, though, it's data for

6   everybody or is it just data for Plus Members?

7        A.   No, that is data for the entire population

8   of transactions.

9        Q.   How do we draw out of that just the Plus

10  Members' data?

11       A.   So you would have to look in each one of

12  those files for each day for each store.  In that

13  header file you would need to identify the

14  transactions that had a Plus Member value in the

15  Plus Member field.

16       Q.   And a Plus Member -- the way H2O keeps

17  track of these things, if a Plus Member is buying

18  something, the Plus Member's number is going to be

19  in the transaction field?

20       A.   If they identify themselves as a Plus

21  Member.

22       Q.   To your knowledge, what do you get by

23  being a Plus Member, anything?

24       A.   At the time I believe there was a discount

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 45 of 230

1    the month of your birthday and special invitations

2    to certain sales.

3        Q.   Okay.  Were you through with your

4    explanation, or is there more to that as far as I

5    can --

6        A.   There may be other benefits, but I don't

7    recall.

8        Q.   I'm sorry.  Wrong question.

9        A.   Oh, okay.

10       Q.   Are you through with your explanation?

11       A.   Oh, okay.

12       Q.   Are you through with --

13       A.   Sorry.  With regard to the explanation, so

14   in order to draw out of that, you would need to

15   develop a program that would open each file and read

16   the Plus Member, the header file, identify the

17   transactions that are Plus Members.  And then from

18   there you could identify the date that the

19   transaction took place, and that would have to get

20   cross-referenced with the Plus Member file, which I

21   believe was provided, that has a complete listing of

22   all the Plus Member numbers and their identifying

23   information.

24           So the transaction data is going to have

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 16 of 20

Page 96

1    a -- what's known as a foreign key, so you're going

2    to have the Plus Member number in the data that

3    refers over here to your list of Plus Members.   So

4    their name and their address and so on won't be in

5    the transaction data.   It'll have to be

6    cross-referenced to the master list of Plus Members.

7         Q.    Okay.

8         MR. SOLBERG:  And so we're all on the same page

9    here, Counsel, now that stuff was produced pursuant

10   to a protective order.   I want to make sure that

11   we're all aware of that, and we obviously have it

12   included as an exhibit here, but I just wanted that

13   on the record.

14   BY MR. SOLBERG:

15        Q.    Let me direct your -- is that it or is

16   there more explanation than that?

17        A.    That's the explanation for a given store

18   for a given day.   You'll have to multiply that

19   process repeatedly for each store for each day

20   within the scope of the lawsuit, the time range

21   within the lawsuit.   So there's a fair number of

22   files for which that process would have to be

23   repeated.

24        Q.    So the data that's been produced, this

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 17 of 20

Page 97

1    electronic data, we're going to have to create our

2    own program to go in and, as you've been talking

3    about, pull the various data that we need in order

4    to compile the Plus Members' purchases for that time

5    frame?

6          A.    I believe so.

7          Q.    Okay.  Let me go in a different direction

8    here.  Let me direct your attention back to

9    Exhibit 2, if you can find that in front of you.

10         A.    Okay.

11         Q.    And I would direct your attention to

12   Page 5 of Exhibit 2, Interrogatory No. 11, and the

13   response of H2O, and I'd ask that you read that

14   particular response.

15         A.    I'm sorry.  Which one?

16         Q.    Read Interrogatory 11 and H2O's response.

17         A.    Okay.

18         Q.    Page 5 and Page 6.

19         A.    Okay.

20         Q.    Now, focusing on 11A, identify each person

21   who, A, was responsible for compliance with any

22   truncation requirement.  As you look at the list

23   that's provided in the response, what is your

24   understanding of who would have been responsible for

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 18 of 20

Page 103

1    STATE OF ILLINOIS      )
                            )      SS:
2    COUNTY OF DU PAGE      )

3

4        I, Theresa Harris, a certified shorthand

5    reporter of the State of Illinois, do hereby

6    certify:

7        That previous to the commencement of the

8    examination of TODD KEENAN, he was by me first duly

9    sworn to testify the whole truth concerning the

10   matters herein;

11       That the foregoing deposition was reported

12   stenographically by me and thereafter reduced to

13   typewriting;

14       That the said deposition was taken before me at

15   the time and place hereinabove specified;

16       That the reading and signing of said deposition

17   was reserved by counsel for the respective parties

18   and the witness, and that the foregoing constitutes

19   a true record of the testimony given by said witness

20   before this reporter;

21       That I am not a relative of or employee or

22   attorney or counsel for any of the parties, nor a

23   relative or employee of any attorney or counsel for

24   any of the parties hereto, nor interested directly

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 19 of 20

Page 104

1    or indirectly in the outcome of this action.

2         IN WITNESS WHEREOF, I have hereunto set my hand

3    this 12th day of June, 2013.

4

5

6

7              Theresa Harris, CSR
               C.S.R. No. 084-00327

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 20 of 20

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
CALENDAR: 13
PAGE 1 of 2
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT L

Order                                        (2/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Camasta

v.                      No.   09 Ch 40180

H2O

ELECTRONICALLY FILED
7/8/2014 5:29 PM
2009-CH-40180
PAGE 2 of 2

### ORDER

This cause coming before the Court for status, and the Court being duly advised in the matter, It is hereby ordered:

(1) Plaintiff's memorandum in support of his motion for class certification is due march 28, 2014.

(2) Defendants Repl response is due April 25, 2014

(3) Plaintiff's reply is due May 16, 2014.

(4) This matter is set For status May 21, 2014 at 9:30 am.

Atty. No.: 61306

Name: WSolberg / A+W

Atty. for: π

Address: 3701 Algonquin Rd

City/State/Zip: Rolling Meadows 60008

Telephone: 847 369-1500

ENTERED:

Judge LeRoy K. Martin, Jr.

Dated: FEB 04 2014

Circuit Court - 1844

Judge                        Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Copy Distribution - White: 1. ORIGINAL - COURT FILE Canary: 2. COPY Pink: 3. COPY